IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KHALILAH JOHNSON,                          :

     Plaintiff,                          :

v.                                         :

                          Civil Action No. GLR-17-1771

UNITED PARCEL SERVICE, INC.                :
(UPS),

                        :

     Defendant.

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Defendant United Parcel Service, Inc.'s ("UPS") Motion to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment (ECF No. 17). This action arises from UPS's employment of Plaintiff Khalilah Johnson as a package delivery driver. The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant in part and deny in part the Motion.[1]

---

[1] Also pending before the Court is UPS's previous Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 6) and Plaintiff Khalilah Johnson's Motion to Exclude Defendant's Reply Exhibits or, in the Alternative, File a Surreply (ECF No. 25). After UPS filed its Motion, Johnson filed her Amended Complaint. (ECF No. 13). When a plaintiff files an amended complaint, it generally moots any pending motions to dismiss because it supersedes the original complaint. <u>Venable v. Pritzker</u>, No. GLR-13-1867, 2014 WL 2452705, at *5 (D.Md. May 30, 2014), <u>aff'd</u>, 610 F.App'x 341 (4th Cir. 2015). Accordingly, the Court will deny UPS's Motion without prejudice.

As for Johnson's Motion, "[u]nless otherwise ordered by the court, surreply memoranda are not permitted to be filed." Local Rule 105.2(a) (D.Md. 2016). As the Court will explain <u>infra</u>, the Court will construe UPS's Motion as a motion to dismiss. As a result, the Court will not consider the exhibits Johnson seeks to exclude or to respond to by filing a surreply. Accordingly, the Court will deny without prejudice Johnson's Motion.

# I.    BACKGROUND[2]

In 2014, Johnson filed a lawsuit against UPS and others asserting discrimination based on race, sex, and religion.  See Johnson v. United Parcel Service, Inc., No. RDB-14-4003 (D.Md. removed Dec. 23, 2014).  The Court ultimately entered summary judgment in favor of UPS on Johnson's claims against it.  See Johnson v. United Parcel Service, Inc., No. RDB-14-4003, 2016 WL 4240072 (D.Md. Aug. 11, 2016).  The United States Court of Appeals for the Fourth Circuit affirmed the Court's decision.  See Johnson v. United Parcel Service, Inc., 681 F.App'x 177 (4th Cir. 2017).

Johnson returned to work from an injury around May 1, 2015, at which point her supervisor confronted her about her prior lawsuit.  (Am. Compl. ¶ 2, ECF No. 13).  Subsequently, her delivery truck began to be overloaded with disorganized packages.  (Id.).  The over-packing occurred every day.  (Id. ¶ 5).  Johnson believed the overloading of her truck was retaliatory.  (Id. ¶ 2(A)).  When she came to work on a day she was not scheduled to appear, she found the truck packed neatly and safely for her replacement driver.  (Id.).  On Friday, May 15, 2015, Johnson's truck was so over packed that she was forced to work past sundown, even though she had received a religious accommodation allowing her to observe the Sabbath beginning at sundown on Friday evenings.  (Id. ¶ 10).  When Johnson warned her managers that they were violating her religious accommodation, they expressed a lack of

---

[2]  Unless otherwise noted, the Court takes the following facts from Johnson's Amended Complaint (ECF No. 20) and accepts them as true.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

2

concern.  (Id. ¶¶ 10–13).  In fact, Johnson alleges that one of her supervisors would go out of his way to make her work late on Friday afternoons, for the express purpose of interfering with her religious accommodation.  (Id. ¶ 13).

On both June 1 and July 30, 2015, Johnson injured herself trying to move around inside her truck in order to retrieve packages and unload them for delivery.  (Id. ¶ 2(D)).  As a result of these injuries, she was out of work beginning in July 2015.  (Id. ¶ 3).  At this point, Johnson filed complaints with UPS and sought workers' compensation for her injuries.  (Id. ¶¶ 2(E), (G)).  When Johnson returned to work in August 2017, the over-packing resumed and she was again injured.  (Id. ¶ 4).

Johnson filed a separate Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging retaliation and discrimination based on sex and religion (the "Charge").  (Am. Compl. Ex. D ["EEOC Charge"] at 16–17, ECF No. 13-4).[3]  On March 29, 2017, the EEOC issued Johnson a Dismissal and Notice of Right to Sue.  (Id. at 15).

---

[3] Citations to the Charge refer to pagination that the Court's Case Management and Electronic Case Files system assigned.

Johnson filed the present action on June 27, 2017. (ECF No. 1). Johnson filed an Amended Complaint on December 15, 2017. (ECF No. 13). In her three-count Amended Complaint, Johnson alleges: Retaliation Due to Protected Activity (Count I); Retaliation for Requesting and Maintaining a Religious Accommodation as a Sabbath Keeping Christian (Count II); and Discriminatory Unequal Terms and Conditions of Employment Due to Religion, Creating a Hostile Work Environment (Count III). (Am. Compl. ¶¶ 1–24). Johnson seeks various damages, front and back pay, pre- and post-judgment interest, attorney's fees and costs, remedial training for UPS management, and out-of-pocket medical expenses. (Id. at 7–8).

UPS now moves to dismiss each claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim upon which relief can be granted under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. Johnson filed an Opposition on February 5, 2018. (ECF No. 20). UPS filed a Reply on March 5, 2018. (ECF No. 24).

## II. DISCUSSION

### A. Standard of Review

#### 1. Rule 12(b)(1)

UPS challenges, inter alia, whether Johnson exhausted her administrative remedies for her claims. Motions to dismiss for failure to exhaust administrative remedies are governed by Rule 12(b)(1) for lack of subject matter jurisdiction. Ferdinand-Davenport v. Children's

Guild, 742 F.Supp.2d 772, 777 (D.Md. 2010) (quoting Khoury v. Meserve, 268 F.Supp.2d 600, 606 (D.Md. 2003)).  As a result, courts treat such motions as motions to dismiss for lack of subject matter jurisdiction for the purpose of this argument.  Id.

A defendant challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'"  Hasley v. Ward Mfg., LLC, No. RDB-13-1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in original) (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)).  When a defendant raises a facial challenge, the Court affords the plaintiff the "the same procedural protection as he would receive under a Rule 12(b)(6) consideration."  Kerns, 585 F.3d at 192 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)).  Because UPS raises a facial challenge to whether Johnson exhausted her administrative remedies, the Court will evaluate its Motion on subject matter jurisdiction grounds under a Rule 12(b)(6) standard.

### 2.     Rule 12(b)(6)

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999)).  A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled

to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

### 2. Conversion to a Motion for Summary Judgment

In this case, UPS filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 17). A motion styled as a motion to dismiss or, in the alternative, for summary judgment implicates the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd sub nom. Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d).

The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Here, the Court exercises its discretion to decline to consider any material beyond the pleadings. See id. (quoting Wright & Miller, supra § 1366, at 159). Thus, the Court will construe UPS's Motion as a motion to dismiss under Rules 12(b)(1) and 12(b)(6).

**B.**   <u>Analysis</u>

**1.**   **Rule 12(b)(1)**

In short, the Court will dismiss Count I for lack of subject matter jurisdiction under Rule 12(b)(1) to the extent Johnson premises Count I on her previous lawsuit against UPS. The Court will not, however, dismiss for lack of subject matter jurisdiction Johnson's remaining claims.

Before a plaintiff can file a lawsuit in federal court alleging a violation of Title VII, she must file a charge with the EEOC.  <u>See</u> <u>Bryant v. Bell Atl. Md., Inc.</u>, 288 F.3d 124, 132 (4th Cir. 2002).  The primary purpose of this requirement is to ensure that the employer knows about the alleged discrimination and has been given the "opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions" before being sued.  <u>Chacko v. Patuxent Inst.</u>, 429 F.3d 505, 510 (4th Cir. 2005) (citing 42 U.S.C. § 200e-5(b)).  This requirement also encourages "quicker, less formal, and less expensive resolution of disputes."  <u>Id.</u> (citing <u>Chris v. Tenet</u>, 221 F.3d 648, 653 (4th Cir. 2000)).

"[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim."  <u>Jones v. Calvert Grp., Ltd.</u>, 551 F.3d 297, 300 (4th Cir. 2009) (citing <u>Davis v. N.C. Dep't of Corr.</u>, 48 F.3d 134, 138–40 (4th Cir. 1995)).  As a result, the scope of the federal suit is determined by, and limited to, the contents of the administrative charge.  <u>Id.</u>  If the claims in the suit "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an

investigation thereof, they are procedurally barred." Chacko, 429 F.3d at 509 (citing Dennis v. Cty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995)).

To determine whether a suit exceeds the scope of the administrative charge, a court must consider whether a complaint contains "those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." Jones, 551 F.3d at 300 (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996)). Although administrative charges must be construed liberally, the Court is not "at liberty to read into [the] charges allegations they do not contain." Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 408 (4th Cir. 2013).

UPS first argues that Johnson did not exhaust her administrative remedies because the Charge only covers misconduct that occurred prior to May 3, 2016, while the Amended Complaint pleads misconduct occurring up until September 2017. The Court disagrees.

The Title VII violation Johnson alleges in her Amended Complaint—UPS's retaliatory over-packing of her truck—occurred both prior to May 2016 and between May 2016 and September 2017. Any violations that occurred between May 2016 and September 2017, then, are "reasonably related" to violations that occurred prior to May 2016 and would "naturally have arisen from an investigation" of the initial EEOC Charge. See Chacko, 429 F.3d at 509 (quoting Dennis, 55 F.3d at 156); Evans, 80 F.3d at 963. While UPS correctly points out that the "continuing violation" theory does not apply to discrete acts of retaliation, see Nat'l R.R.

Passenger Corp. v. Morgan, 536 U.S. 101, 110–14 (2002), that argument is misplaced. Johnson alleges that the over-packing occurred daily over the course of multiple months, amounting to a hostile work environment. As a result, she alleges a single, continuing act of retaliation rather than several, discrete acts of retaliation. See Morgan, 536 U.S. at 116 (holding that hostile work environment claims, such as the one Johnson alleges here, does not "occur on any particular day," but instead, "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own").[4] Thus, the exhaustion requirement does not bar Johnson's claims solely because of the dates on which the events allegedly took place.

UPS next contends that the allegations Johnson brings in her Amended Complaint are not sufficiently related to the allegations she brings in her Charge. The Court agrees with UPS that Johnson has not exhausted her administrative remedies for her claim that UPS retaliated against her for her prior suit against it. The Court, however, disagrees with UPS as to Johnson's remaining claims. The Court begins with Count I.

### i. Count I

The Court concludes that Johnson only partly exhausted her administrative remedies for Count I. In her Charge, Johnson alleges that "[w]hen I complain about the unequal treatment from upper management, I am faced with unequal treatment in the form of having

---

[4] Relatedly, UPS argues that Johnson fails to state a hostile work environment claim under Rule 12(b)(6) because, inter alia, Johnson only alleges discrete acts. For the foregoing reasons, the Court disagrees and will not dismiss Johnson's hostile work environment claim

my work sabotaged, suspensions, written counseling[s] and threats of termination." (EEOC Charge at 16). Similarly, in her Amended Complaint, Johnson states that UPS retaliated against Johnson "at and around the same time" that Johnson "fil[ed] complaints with UPS" and that the alleged retaliation she suffered is "[causally] related" to those complaints. (Am. Compl. ¶¶ 2(G), 7). Thus, to the extent Johnson premises Count I on retaliation she allegedly suffered for filing complaints with UPS, Johnson exhausted her administrative remedies.

By contrast, to the extent Johnson premises Count I on retaliation for bringing suit against UPS, Johnson has not exhausted her administrative remedies. The Charge makes no reference to a prior lawsuit. Although the Court must construe the EEOC Charge liberally, it has no power to read into the Charge allegations it does not contain. See Balas, 711 F.3d at 408. Thus, Johnson did not exhaust her administrative remedies to the extent it alleges retaliation based on Johnson's having filed a "prior active federal discrimination lawsuit." (See Am. Compl. ¶ 2).

The Court, therefore, will dismiss Count I in part for lack of subject matter jurisdiction under Rule 12(b)(1).

## ii. Counts II and III

As for Counts II and III, the Court concludes that Johnson exhausted her administrative remedies. Her Charge asserts that UPS "subjected [Johnson] to unequal terms and conditions of employment and disciplined [her] because of [her] . . . religion (Seventh

_____

on that basis.

Day Adventist), and in retaliation for engaging in a protected activity." (EEOC Charge at 17). Likewise, under Count II, Johnson pleads that UPS "punish[ed] [her] for her [religious] accommodation request" and "punish[ed] her for abiding by and insisting on her religious accommodation." (Am. Compl. ¶ 17). In addition to asserting that UPS discriminated against Johnson because she was Seventh Day Adventist, her Charge also alleges that "the unequal treatment has taken the form of additional route stops and packages being placed" in her truck. (EEOC Charge at 16). In the same way, Johnson states under Count III that UPS subjected Johnson to a hostile work environment by dangerously overloading her delivery truck because of her religion. (Am. Compl. ¶¶ 18–24). Thus, Johnson exhausted her administrative remedies for Counts II and III.

The Court, therefore, will not dismiss Counts II and III for lack of subject matter jurisdiction under Rule 12(b)(1).

In sum, Johnson did not exhaust her administrative remedies to the extent Johnson premises Count I on her previous lawsuit against UPS. Johnson did, however, exhaust her administrative remedies for her remaining claims. Accordingly, the Court will only dismiss Count I in part for lack of subject matter jurisdiction under Rule 12(b)(1). The Court turns to addressing whether Johnson sufficiently states her remaining claims under Rule 12(b)(6).

### 2.     Rule 12(b)(6)

At bottom, the Court will deny the Motion to the extent Johnson premises Counts I and II on retaliation she allegedly suffered for filing complaints with UPS and insisting that

UPS respect her religious accommodation. The Court will also deny the Motion as to Count III. Conversely, the Court will grant the Motion as to Count II to the extent Johnson alleges she suffered retaliation for requesting an accommodation because that claim fails to state a claim upon which relief can be granted.

### i. Retaliation Claims (Counts I and II)

42 U.S.C. § 2000e-3(a) (2018) prohibits employers from retaliating against employees who oppose unlawful employment practices, such as prior discrimination. To properly plead retaliation, a plaintiff must allege "(1) that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (quoting EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405–06 (4th Cir. 2005)).

Both Count I and II allege the same adverse employment action—the dangerous overloading of Johnson's truck, which caused her injury and interfered with her ability to practice her religion. (Am. Compl. ¶¶ 2, 10). So, the Court must first address whether the overloading of Johnson's truck with disorganized packages constitutes an adverse employment action. The Court concludes that it is.

In the retaliation context, an adverse employment action is one that "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Rochon v.

Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  As the Supreme Court has observed, "Common sense suggests . . . one good way to discourage an employee . . . from bringing discrimination charges would be to insist that she spend more time performing . . . more arduous duties . . . ." Id. at 70-71; see also Tawwaab v. Va. Linen Serv., Inc., 729 F.Supp.2d 757, 785 (D.Md. 2010) (noting that courts have found changes in job responsibilities materially adverse where the new tasks are "dirtier, more arduous, less prestigious, [and] objectively inferior").

Here, Johnson's allegations meet this standard.  Johnson pleads at different points in the Amended Complaint that her work truck was: "dangerously packed," (Am. Compl. ¶ 2(A); "stuffed with overloaded packages that were dangerous to [her,]" (id. ¶ 2); and "packed in a jumbled, dangerous manner that prevented her from efficient working, endangered her health and safety, harmed her job performance, and in fact injured her," (id. ¶ 2(B)).  She further alleges that this "dangerous packing was daily, constant, clear, obvious . . . and beyond what a reasonable person can tolerate." (Id. ¶ 5).  A reasonable deliverywoman might be dissuaded from complaining about discrimination if she knew her complaints would result in her truck being overloaded with disorganized packages, such that it would be more difficult, and even dangerous, for her to retrieve the packages at each stop. See Burlington, 548 U.S. at 68.  Thus, Johnson adequately alleges the adverse employment action element—the second element—of both of her retaliation claims.

Counts I and II allege different reasons for UPS's overloading.  Count I alleges that

UPS overloaded Johnson's truck because she previously "filed complaints with UPS." (Am. Compl. ¶¶ 2, 2(G)).[5] Meanwhile, Count II alleges that UPS overloaded her truck because she requested a religious accommodation and, having been granted that accommodation, insisted that it be respected. (Id. ¶¶ 10–12). Thus, the Court must next decide whether UPS overloaded Johnson's truck because she engaged in protected activity—the first element of a retaliation claim. The Court addresses each Count in turn.

### a.  Retaliation for UPS Complaints (Count I)

For retaliation claims, protected activity "may fall into two categories, opposition and participation." Navy Fed., 424 F.3d at 406. Participation is "participating in an ongoing investigation or proceeding under Title VII," while opposition is "opposing discriminatory practices in the workplace." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). Sufficiently opposing discriminatory practices "need not rise to the level of formal charges of discrimination" and may include "informal protests, such as voicing complaints to employers or using an employer's grievance procedures." Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981) (citations omitted). But to be protected, the substance of a complaint must be that an employer is violating Title VII specifically; general complaints of unfair treatment are not protected activity. See McGruder v. Epilepsy Found. of Am., Inc., No. AW-11-02310, 2012 WL 832800, at *4–5 (D.Md. Mar. 9, 2012) (citing

---

[5] As the Court described above, under Count I Johnson also alleges that UPS retaliated against her for her previous lawsuit. The Court will not address whether this constitutes protected activity because Johnson failed to exhaust her administrative remedies as to this

Barber v. CSX Distrib. Servs., 68 F.3d 694, 701–02 (3d Cir. 1995)) (concluding that plaintiff's email complaining that an employee should be fired for substandard performance is not protected because it is a general complaint that does not reference race or disability).

Here, UPS maintains that Johnson's complaints about an overloaded truck—alone—are not protected activity. Yet Johnson did more. She "complain[ed] about retaliation." (Am. Compl. ¶ 7). Put differently, she complained that her truck was being overloaded because she had spoken out against perceived religious discrimination. Such a complaint, even one made only internally, is protected activity. See Armstrong, 647 F.2d at 448 (citations omitted).

UPS also submits that Count I fails to state a claim because there is no allegation that the individuals who were responsible for packing Johnson's truck were aware of her complaints, and even if there was, there is no basis for imputing to UPS liability for its employees' misconduct. The Court disagrees.

Johnson allegedly made her complaints to UPS, so assuredly, UPS was aware of Johnson's complaints. (Am. Compl. ¶ 2(G)). In addition, UPS provides the Court with no reason to depart from the normal rule that the conduct of an employee acting within the scope of his employment is imputed to his employer. See, e.g., Globe Indem. Co. v. Victill Corp., 119 A.2d 423, 427 (Md. 1956) ("In the law of agency it is the basic general rule that a master is liable for the acts which his servant does with the actual or apparent authority of the

---

portion of Count I.

master, or which the servant does within the scope of his employment, or which the master ratifies with the knowledge of all the material facts.").  Likewise, there is no allegation that only the employees formally responsible for packing Johnson's truck could have engaged in the retaliatory over-packing.  Thus, UPS was aware of Johnson's complaints, and the Court imputes to UPS its employees' alleged misconduct.[6]

The Court, therefore, concludes that Count I sufficiently states a claim to the extent that Johnson premises Count I on retaliation she allegedly suffered for filing complaints with UPS.  Accordingly, the Court will deny the Motion in part.[7]

### b.    Count II

Under Count II, Johnson alleges that UPS overloaded her truck because she requested a religious accommodation and, having been granted that accommodation, insisted that UPS respect it.  (Am. Compl. ¶ 10).  As the Court described above, retaliation claims may allege two varieties of protected activity: "opposition and participation."  Navy Fed., 424 F.3d at

_____

[6] In addition to asserting that Johnson's allegations under Counts I and II do not meet the first and second elements of retaliation, UPS also submits that Johnson's allegations under those Counts do not meet the third element—causation.  UPS overlooks Johnson's allegation that the overloading of her delivery truck was "[causally] related" to the complaints she made to UPS "at and around the same time."  (Am. Compl. ¶ 7).  The Court must accept this allegation as true at this stage of the case.  Lambeth, 407 F.3d at 268 (citing Scheuer, 416 U.S. at 236).

406.

On the one hand, requesting a religious accommodation itself does not fall into either of these categories. As this Court has previously concluded, "the making of such a request neither 'oppos[es] any practice' of [UPS], nor constitutes 'participation in an investigation, proceeding, or hearing' [having] to do with any Title VII violations committed by [UPS]." Perlman v. Mayor of Balt., No. SAG-15-1620, 2016 WL 640772, at *6 (D.Md. Feb. 18, 2016). Thus, Johnson fails to state a claim under Count II to the extent she alleges that she was retaliated against for simply requesting a religious accommodation.

On the other hand, Johnson also alleges that UPS retaliated against her for insisting that UPS respect a religious accommodation it granted to her. When an employee opposes an employment action (or, here, inaction) that she "reasonably believes to be unlawful," her conduct constitutes "opposition" that is protected activity. Navy Fed., 424 F.3d at 406. Notably, the opposed employment action need not actually violate Title VII, as long as the employee "reasonably believes" that it does in light of the surrounding circumstances. Boyer-Liberto, 786 F.3d at 285.

Here, Johnson alleges that "retaliatory over[-]packing of [her] UPS truck . . . made her

---

[7] UPS also maintains that because a workers' compensation settlement compensated Johnson for her injuries, the doctrine of election of remedies bars Count I. The Court can dispose of this final argument easily because the election of remedies is a Maryland state law doctrine. This case is before the Court on federal question jurisdiction and therefore federal law, rather than state law, governs. See, e.g., J. v. Genuine Title, LLC, No. RDB-14-0081, 2015 WL 8315704, at *13 (D.Md. Dec. 9, 2015) (citing Varsity Gold, Inc. v. Lunenfeld, No. CCB-08-550, 2008 WL 5243517 at *2 (D.Md. Dec. 12, 2008)).

miss her Sabbath religious accommodation," that she "warned her managers about th[e] danger of not keeping her Sabbath" and "insisted on keeping her Sabbath and this accommodation from 2015 through 2017." (Am. Compl. ¶¶ 10, 10(C)). Based on these allegations, the Court concludes that Johnson "reasonably believe[d]" that UPS over-packing her truck in order to interfere with her religious accommodation violated Title VII. See Boyer-Liberto, 786 F.3d at 285. Thus, to the extent Johnson insisted that UPS respect her religious accommodation, she "oppos[ed] discriminatory practices," which constitutes protected activity. See Laughlin, 149 F.3d at 259.

The Court, therefore, concludes that Johnson fails to state a claim under Count II to the extent that she alleges UPS retaliated against her for requesting a religious accommodation. Nonetheless, the Court concludes that Johnson sufficiently states a claim under Count II to the extent that Johnson premises Count II on retaliation she allegedly suffered for insisting that UPS respect her religious accommodation. Accordingly, the Court will grant in part and deny in part the Motion as to Count II.

### ii.    Hostile Work Environment Claim (Count III)

Under Count III, Johnson alleges that UPS subjected her to a hostile work environment on the basis of her religion. In short, UPS provides no basis for the Court to dismiss Johnson's hostile work environment claim under Rule 12(b)(6).

To state a hostile work environment claim, a plaintiff must plead that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's [religion]; (3) which is sufficiently

severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Boyer–Liberto, 786 F.3d at 277 (quoting Okoli v. City of Balt., 648 F.3d 216, 220 (4th Cir. 2011)).

Here, UPS argues Johnson fails to state a hostile work environment claim because there is no basis for imputing liability to UPS for the harassment she alleges and because there is no allegation that the individuals who overloaded her truck were aware of her religious beliefs. The Court disagrees because the Court has already concluded that based on Johnson's allegations, UPS was aware of Johnson's religion, and the conduct of UPS employees are imputed to UPS. Thus, the Court concludes that UPS provides no basis for the Court to dismiss Johnson's hostile work environment claim under Rule 12(b)(6). Accordingly, the Court will deny the Motion as to Count III.

## III.   CONCLUSION

For the foregoing reasons, grant in part and deny in part UPS's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 17). The Court will grant the Motion to the extent that Johnson premises Counts I and II on retaliation she allegedly suffered for her previous lawsuit against UPS and for requesting a religious accommodation. The Court will deny the Motion as to Johnson's remaining claims.

In addition, the Court will deny UPS's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 6) without prejudice and deny without prejudice Johnson's

Motion to Exclude Defendant's Reply Exhibits or, in the Alternative, File a Surreply (ECF No. 25).

The Court will order UPS to file a responsive pleading. A separate order follows.

Entered this 16th day of August, 2018 _____/s/_____

George L. Russell, III
United States District Judge